[No. 13383.  Department One.  September 15, 1916.]

FRANK M. SKINNER *et al.*, *Appellants*, v. IDA C. McCRACKAN

*et al.*, *Respondents.*[1]

EJECTMENT—BETTERMENTS—STATUTES—ADVERSE POSSESSION—GOVERNMENT LAND.  In ejectment, there can be no allowance for betterments placed on the land while the title was in the United States, under Rem. 1915 Code, § 797, authorizing a counterclaim for the value of permanent improvements made and taxes paid by a defendant holding in good faith under color or claim of title adversely to the claim of plaintiff; since there can be no adverse holding against the United States.

SAME—BETTERMENTS—TAXES—IMPROVEMENTS.  Such act authorizes a counterclaim for taxes paid which became a lien on the land subsequent to the issuance of a patent therefor; and for a pipe line which was a permanent improvement to the land.

APPEAL—REVIEW—FINDINGS.  Findings upon conflicting evidence will not be disturbed upon appeal where the trial court was in the better position to determine the facts.

Appeal by plaintiffs from a judgment of the superior court for Yakima county, Grady, J., entered November 7, 1914, upon findings favorable to the plaintiffs, in an action of ejectment, tried to the court.  Reversed.

*McAulay & Meigs*, for appellants.

*Englehart & Rigg*, for respondents.

MOUNT, J.—This action was brought in ejectment to recover possession of about three acres of land lying south of the right of way of the Sunnyside canal, in Yakima county. The complaint alleged ownership and right of possession in the plaintiffs.  The defendants, for answer, denied generally the allegations of the complaint, and after several affirmative defenses, pleaded payment of taxes and construction of betterments amounting to $961.48 while holding in good faith

[1]Reported in 159 Pac. 977.

under color and claim of title. For reply, the plaintiffs denied the affirmative matter set forth in the answer.

Upon these issues the case was tried to the court without a jury. The court made findings of fact and conclusions of law and entered a judgment awarding the land to the plaintiffs, and adjudging that the value thereof, exclusive of the improvements, at the time the defendants took possession, was $55; that the plaintiffs' damages for the withholding of possession amounted to $45; that the value of the improvements and the taxes paid by the defendants was $742.03; and that this amount should be set off against the damages; and that neither party should recover costs. The plaintiffs have appealed from that part of the judgment fixing the value of the lands at $55; damages at $45; and fixing the value of the betterments at $742.03.

It appears that, in the fall of 1904, the defendants purchased a tract of land south of the three acres in dispute. This three acres was supposed to be a part of that tract, and a deed was executed to the defendants describing the tract by metes and bounds, including the three acres. At that time the title to this three acres was in the United States, and not in the defendants' vendor. Afterwards, in January, 1908, the Northern Pacific Railway Company acquired title to the three acres, with other lands, from the United States, and a patent was issued therefor. Thereafter the plaintiffs, the appellants here, by mesne conveyances, became the owner of the three-acre tract. In the year 1905, while the title to this three-acre tract was in the United States, the respondents purchased therefor a water right for $102.60, fenced the three acres at an expense of $70; cleared the land at an expense of $59.40; and constructed a board flume at an expense of $11. At about the same time, they planted about two acres of the tract to peach trees. In 1907, the respondents purchased an additional water right for $19.80. In November, 1909, the respondents paid taxes for the year 1908 amounting to $5.96; in 1910, taxes for 1909, $6.22;

February 17, 1911, taxes for 1910, $4.12; and in May, 1911, building pipe line, which was valued by the court at $240; and on February 15, 1912, taxes for 1911, $5.11.

It is argued by the appellants that the court erred in allowing all the items which were expended by the defendants upon the land while the title thereto was still in the United States. Our betterment statute is as follows:

"In an action for the recovery of real property upon which permanent improvements have been made or general or special taxes or local assessments have been paid by a defendant, or those under whom he claims, holding in good faith under color or claim of title adversely to the claim of plaintiff, the value of such improvements and the amount of such taxes or assessments with interest thereon from date of payment must be allowed as a counterclaim to the defendant." Rem. 1915 Code, § 797.

It is plain from this statute that, before the counterclaim for betterments in the way of permanent improvements can be allowed, the person claiming for such improvements must be holding in good faith under color or claim of title adversely to the claim of the plaintiff. *Johnson v. Ingram*, 63 Wash. 554, 115 Pac. 1073; *Gould v. White*, 62 Wash. 406, 114 Pac. 159. As we have seen above, the title to this property, both legal and equitable, was in the United States prior to January 6, 1908. The defendants went into possession and made a large part of these improvements in 1905 while the title was in the United States. It is plain, therefore, that when these improvements were made upon the property, there was no adverse holding by the defendants, because there can be no adverse holding against the United States. Rem. 1915 Code, § 790.

In the case of *Hawke v. Deffebach*, 4 Dak. 20, 22 N. W. 480, where the defendant was dispossessed and made claim for improvements, and where his predecessors in interest were in the occupation of the land and had made improvements thereon prior to the time the plaintiff initiated his right by

which he subsequently obtained title from the government, and where there was a statute like our own, the court said:

"For it is manifest that, standing by itself, the territorial statute could have no operation or effect so long as these lands were the property of the United States, and that the patent of the government would carry with it the full and unincumbered title, free from every adverse claim, since it would be impossible for anyone to hold adversely or in good faith against the government, and hence to acquire any right, legal or equitable, to compensation for improvements erected while the title was yet in the United States. *Steel v. Smelting Co.*, 106 U. S. 456."

This judgment was afterwards affirmed by the supreme court of the United States in *Deffebach v. Hawke*, 115 U. S. 392. See, also, *Woodruff v. Wallace*, 30 Okl. 355, 41 Pac. 357; *Chavez v. Chavez de Sanchez*, 7 N. M. 58, 32 Pac. 137.

It follows that, when the United States issued a patent to the railway company, all the improvements which were then upon this three acres went with the land, and the defendants would have no right to claim betterments for the improvements then upon the land. We are of the opinion, therefore, that the trial court erred in allowing to the defendants the costs of the improvements placed upon the land prior to the disposition thereof by the United States in 1908.

The appellants further argue that the trial court erred in allowing for the taxes paid upon the land by the defendants after 1908. The taxes were a lien upon the land. They were paid by the defendants. And, as a matter of course, they are entitled to be reimbursed therefor under the terms of the statute. It is true the plaintiffs claim to have paid the taxes upon this land in paying upon a larger tract owned by them. But it is not disputed that the defendants paid the taxes upon this particular tract, and it is not disputed that the defendants paid the taxes before any payments were made by the plaintiffs, if they were due from the plaintiffs. We think the trial court properly allowed the amount of the taxes stated above.

It is next urged as error that the court allowed to the defendants the value of a pipe line installed in the year 1911 at $240. There is evidence in the record that this pipe line is a permanent improvement and betterment to the land, and of value thereto. There is some dispute upon this question, but we are of the opinion that the trial court properly found upon that item.

It is next argued that the trial court erred in finding the value of the land at $55. There were different estimates made of the value of the land, all the way from $5 an acre to $150 an acre. We think the trial court was in a better position to judge of the value of the land upon the testimony than we are, and, for that reason, we are not disposed to disturb either the finding of value of the land or the rental value thereof at $45, as found by the court.

For the reasons above stated, the judgment of the trial court is reversed, and the cause remanded with directions to enter a judgment in counterclaim in favor of the defendants for taxes paid amounting to $21.41, and for betterments, $240, in accordance with Rem. 1915 Code, § 799, the appellants to recover costs in this court.

CHADWICK, ELLIS, and FULLERTON, JJ., concur.